

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | Criminal No. 19-678 |
| MARY MARGARET CHAMBLEE, | § § | UNDER SEAL |
| Defendant. | § § | |

# INDICTMENT

The Grand Jury charges:

## General Allegations

At all times material to this Indictment, unless otherwise specified:

### The Medicare Program (Generally)

1.  The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were sixty-five years of age or older, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Medicare was a "healthcare benefit program" as defined by Title 18, United States Code, Section 24(b).

2.  Medicare was subdivided into multiple parts. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

3.  Orthotic devices were a type of DME that included rigid and semi-rigid devices such as shoulder braces, knee braces, back braces, and wrist braces (collectively "orthotics" or "braces").

4. Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a unique Medicare identification number.

5. DME companies, physicians, and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a unique Medicare "provider number." A healthcare provider with a Medicare provider number could file true and accurate claims with Medicare to obtain reimbursement for medically necessary services rendered to beneficiaries.

6. Enrolled Medicare providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by the Anti-Kickback Statute and other laws and regulations. Providers were given online access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

7. Medicare reimbursed DME companies and other healthcare providers for services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

8. To bill Medicare for services rendered, a provider submitted a claim form (Form 1500). When a Form 1500 was submitted, usually in electronic form, the provider certified that: (1) the contents of the form were true, correct, and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim were medically necessary.

9. A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

10. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary to the treatment of the beneficiary's illness or injury and prescribed by a physician who has conducted a needs assessment, evaluated, and/or treated the beneficiary.

### The Defendant and Related Companies

11. GeriMed, Inc. ("GeriMed") was a Texas business entity purportedly doing business in Houston, Texas.

12. Defendant **MARY MARGARET CHAMBLEE**, a resident of Harris County, Texas and a pharmacist licensed in the State of Texas, owned and operated GeriMed.

13. Company A was a Georgia business entity purportedly doing business in Fayetteville, Georgia.

### COUNT 1
### Conspiracy to Defraud the United States and to Pay Health Care Kickbacks
### (Violation of 18 U.S.C. § 371 (42 U.S.C. § 1320a-7b(b)(1)&(2)))

14. Paragraphs 1 through 13 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

15. From in or around March 2017 through in or around December 2018, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

3

## MARY MARGARET CHAMBLEE

did knowingly and willfully combine, conspire, confederate and agree with each other, and others known and unknown to the grand jury, to commit certain offenses against the United States, that is,

  a. to defraud the United States by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare, and to commit certain offenses against the United States, that is:

  b. to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

  c. to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

## Purpose of the Conspiracy

16. It was a purpose of the conspiracy for the defendant **MARY MARGARET CHAMBLEE** and her co-conspirators, known and unknown to the Grand Jury, to unlawfully enrich themselves and others by: (1) paying kickbacks and bribes in exchange for signed doctors' orders for Medicare beneficiaries for braces that were medically unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented; (2) submitting and causing the submission of false and fraudulent claims for health care benefits to Medicare; (3) concealing and causing the concealment of false and fraudulent claims to Medicare; and (4) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means of the Conspiracy

The manner and means by which defendant **MARY MARGARET CHAMBLEE** and others sought to accomplish the purpose and object of the conspiracy included, among other things, the following:

17. Defendant **MARY MARGARET CHAMBLEE** falsely certified to Medicare that she, as well as GeriMed, would comply with all federal regulations and federal laws, including that they would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that they would comply with the federal Anti-Kickback Statute.

18. Defendant **MARY MARGARET CHAMBLEE**, through GeriMed, entered into an agreement to purchase completed prescriptions for braces and other Medicare-required documents from her co-conspirators.

19. Defendant **MARY MARGARET CHAMBLEE**, through GeriMed, paid illegal kickbacks and bribes to her co-conspirators in exchange for the referral of completed prescriptions

for braces and other Medicare-required documents (collectively referred to as "doctors' orders") that were used to submit claims to Medicare on behalf of GeriMed.

20. Defendant **MARY MARGARET CHAMBLEE** and her co-conspirators disguised the fact that she was purchasing doctors' orders by referring to the doctors' orders as "leads" and referring to the services the co-conspirators provided as "marketing" services.

21. The doctors' orders that **MARY MARGARET CHAMBLEE** purchased from her co-conspirators and submitted to Medicare for reimbursement were for braces that were often not medically necessary.

22. From in or around March 2017 through in or around December 2018, the exact dates being unknown to the Grand Jury, GeriMed submitted and caused the submission of approximately $6,372,872.86 in claims to Medicare for braces, the vast majority of which were predicated on illegal kickbacks. Medicare paid GeriMed $3,353,428.99 on those claims.

### Overt Acts

23. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, and elsewhere, the following overt acts, among others:

   a. On or about March 9, 2017, **MARY MARGARET CHAMBLEE** paid or caused the payment of approximately $7,650.00 to Company A in exchange for signed doctors' orders for braces that were later billed to Medicare.

   b. On or about March 15, 2017, **MARY MARGARET CHAMBLEE** paid or caused the payment of approximately $7,750.00 to Company A in exchange for signed doctors' orders for braces that were later billed to Medicare.

    c. On or about March 29, 2017, **MARY MARGARET CHAMBLEE** paid or caused the payment of approximately $9,000.00 to Company A in exchange for signed doctors' orders for braces that were later billed to Medicare.

    d. On or about April 6, 2017, **MARY MARGARET CHAMBLEE** paid or caused the payment of approximately $10,125.00 to Company A in exchange for signed doctors' orders for braces that were later billed to Medicare.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-5
### Payment of Health Care Kickbacks
### (42 U.S.C. § 1320a-7b(b)(2), 18 U.S.C. § 2)

24.    Paragraphs 1 through 13 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

25.    On or about the dates enumerated below, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**MARY MARGARET CHAMBLEE**

aiding and abetting and aided and abetted by others known and unknown to the Grand Jury did knowingly and willfully offer to pay and pay remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind to a person in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and for purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, ordering, of any good, facility, item, and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare as set forth below:

| Counts | Approximate Date | Approximate Amount of Kickback or Bribe | Recipient |
|---|---|---|---|
| 2 | 03/09/17 | $7,650.00 | Digital Intervention LLC |
| 3 | 03/15/17 | $7,750.00 | Digital Intervention LLC |
| 4 | 03/28/17 | $9,000.00 | Digital Intervention LLC |
| 5 | 04/06/17 | $10,125.00 | Digital Intervention LLC |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2) and Title 18, United States Code, Section 2.

## NOTICE OF CRIMINAL FORFEITURE
## (18 U.S.C. § 982(a)(7))

26.     Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to Defendant **MARY MARGARET CHAMBLEE** that upon conviction of any Counts in this Indictment, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses is subject to forfeiture.

27.     Defendant **MARY MARGARET CHAMBLEE** is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

28.     Defendant **MARY MARGARET CHAMBLEE** is notified that if any of the forfeitable property, or any portion thereof, as a result of any act or omission of defendant or his co-conspirators cannot be located upon the exercise of due diligence because it:

a.      has been transferred, or sold to, or deposited with a third party;

b.  has been placed beyond the jurisdiction of the Court;

c.  has been substantially diminished in value; or

d.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File
_____
FOREPERSON

RYAN K. PATRICK
UNITED STATES ATTORNEY

ALLAN MEDINA
ACTING DEPUTY CHIEF, HEALTH CARE FRAUD UNIT
U.S. DEPARTMENT OF JUSTICE

_____
CATHERINE WAGNER
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice